IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| J.G. OPTICAL, INC., on behalf of itself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE TRAVELERS COMPANIES, INC. and THE CHARTER OAK FIRE INSURANCE COMPANY,<br><br>*Defendants*. | Case No. 2:20-cv-05744 |

## DEFENDANT THE CHARTER OAK FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS THE COMPLAINT</u>

Liza M. Walsh
William T. Walsh, Jr.
WALSH PIZZI O'REILLY
FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, N.J. 07102
(973) 757-1100

Stephen E. Goldman
(*pro hac vice* motion to be filed)
Wystan M. Ackerman
(*pro hac vice* motion to be filed)
Denis J. O'Malley
(*pro hac vice* motion to be filed)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200

*Attorneys for Defendants, The Travelers Companies, Inc. and The Charter Oak Fire Insurance Company*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................1

II.    PROCEDURAL HISTORY AND ALLEGED FACTS ..............................4

     A.     This Lawsuit ................................................................4

     B.     Contract Language At Issue ...............................................5

         1.     Relevant Coverage Provisions ......................................5

         2.     The Virus Exclusion ................................................7

III.   LEGAL STANDARDS .............................................................8

IV.   ARGUMENT......................................................................9

     A.     Plaintiff Is Not Entitled to Civil Authority Coverage as a Matter of Law......................................................................10

         1.     Civil Authority Coverage Does Not Apply Because the Orders Did Not "Prohibit Access" to Plaintiff's Premises ......10

         2.     Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property" ...............16

         3.     Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus or Other Excluded Causes of Loss ......................................................18

     B.     Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law.........................................25

         1.     The Complaint Fails to Plead Any "Direct Physical Loss of or Damage to Property" at the Insured Premises ...............26

         2.     Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of Insurance Policy Interpretation.............................................................33

         3.     Plaintiff's Alleged Losses Were Not Caused by a Covered Cause of Loss ............................................36

V.     CONCLUSION...................................................................39

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
  763 N.Y.S.2d 243 (N.Y. App. Div. 2003) .........................................................14

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
  67 F. App'x 248 (5th Cir. 2003) (unpublished) ..................................................13

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
  308 F. Supp. 2d 331 (S.D.N.Y. Mar. 12, 2004) ................................................14

*Aetna Cas. & Sur. Co. v. Morton Int'l Inc.*,
  1995 WL 865782 (N.J. Super. Ct. Law Div. Aug. 7, 1995) ..............................35

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir.1994) .............................................................................. 7-8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................8

*Backroads Corp. v. Great Northern Ins.*,
  2005 WL 1866397 (N.D. Cal. 2005) ................................................................14

*Bartley v. Travelers*,
  2020 WL 1987251 (D.N.J. Apr. 27, 2020) .........................................................2

*Bass v. Butler*,
  116 F. App'x 376 (3d Cir. 2004) ......................................................................39

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................8

*Bruni v. City of Pittsburgh*,
  824 F.3d 353 (3d Cir. 2016) ...............................................................................8

*Brusco v. Harleysville Ins. Co.*,
  2014 WL 2916716 (D.N.J. June 26, 2014) .........................................................2

*By Dev., Inc. v. United Fire & Cas. Co.*,
  2006 WL 694991 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609
  (8th Cir. 2006) .................................................................................................15

*Commstop, Inc. v. Travelers Indemn. Co. of Conn.*,
  2012 WL 1883461 (W.D. La. 2012) ...............................................................15

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ..............................................................................8

*In re COVID-19 Business Interruption Protection Ins. Litig.*,
  MDL No. 2942 ....................................................................................................1

*Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*,
  226 N.J. 403, 143 A.3d 273 (2016) ..............................................................9, 33

*Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*,
  774 N.Y.S.2d 710 (N.Y. App. Div. 2004) ......................................................38

*Dae Assocs., LLC v. AXA Art Ins. Corp.*,
  158 A.D.3d 493 (N.Y. App. Div. 2018) ..........................................................30

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
  636 F.3d 683 (5th Cir. 2011) .....................................................................16, 18

*Diesel Barbershop, LLC, et al. v. State Farm Lloyds*,
  2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) .............................. 22-23, 27, 37

*Durant v. Horton*,
  2008 WL 2510661 (D.N.J. June 19, 2008) ...................................................9, 14

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) .............................................................................11

*Gavrilides Management Co. v. Michigan Ins. Co.*,
  Case No. 20-258-CB, Mich. Cir. Ct. for Ingham County,
  Tr. of July 1, 2020 Hearing .........................................................20-23, 26-28, 37

*Goldenberg v. Indel, Inc.*,
  741 F. Supp. 2d 618 (D.N.J. 2010) ................................................................ 7-8

*Gregory Packaging, Inc. v. Travelers Property Cas. Co. of America*,
  2014 WL 6675934 (D.N.J. Nov. 25, 2014) ................................................. 32-33

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
   486 S.E.2d 249 (N.C. App. 1997)......................................................................29, 34

*HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*,
   527 N.E.2d 1179 (Mass. App. Ct. 1988) ........................................................30

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*,
   127 A.D.3d 922 (N.Y. App. Div. 2015) ......................................................24, 38

*J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*,
   2007 WL 9775576 (S.D. Miss. Nov. 19, 2007)................................................30

*Jernigan v. Nationwide Mut. Ins. Co.*,
   2006 WL 463521 (N.D. Cal. Feb. 27, 2006) ....................................................38

*Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*,
   2014 WL 1041831 (S.D.N.Y. Mar. 18, 2014)....................................................38

*Johnson v. Shop-Vac Corp.*,
   2020 WL 3496957 (D.N.J. June 29, 2020)........................................................11

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v.
   Chubb Corp.*,
   2010 WL 4026375 (E.D. La. Oct. 12, 2010) ................................................ 17-18

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v.
   Nat'l Fire Ins. Co. of Hartford*,
   2007 WL 2489711 (M.D. La. Aug. 29, 2007)....................................................15

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
   2020 WL 886120 (D.S.C. Feb. 24, 2020)..........................................................18

*Longobardi v. Chubb Ins. Co. of New Jersey*,
   121 N.J. 530, 582 A.2d 1257 (1990) ..................................................................9

*Mar. Park, LLC v. Nova Cas. Co.*,
   2019 WL 1422918 (N.J. Super. Ct. App. Div. Mar. 29, 2019) ..........................19

*Napoli v. HSBC Mortg. Servs. Inc.*,
   2012 WL 3715936 (D.N.J. Aug. 27, 2012) ........................................................39

*Nevers v. Aetna Ins. Co.*,
   546 P.2d 1240 (Wash. Ct. App. 1976)................................................................30

iv

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) ............................................................29, 34

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
    2014 WL 12480022 (N.D. Ga. May 23, 2014).................................................30

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
    2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) .............................................14, 18

*Pentair, Inc. v. American Guar. and Liab. Ins. Co.*,
    400 F.3d 613 (8th Cir. 2005) ..............................................................................29

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) ........................................................14, 34

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*,
    2000 WL 35572338 (D.N.J. June 6, 2000)..........................................................9

*Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) ........................................................................ 30-32

*Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*,
    2007 WL 9703576 (S.D. Fla. Oct. 19, 2007) ....................................................23

*Princeton Women's Ctr. v. ProSelect Ins. Co.*,
    2011 WL 4901310 (D.N.J. Oct. 14, 2011) .................................................. 35-36

*Robert W. Hayman, Inc. v. Acme Carriers, Inc.*,
    303 N.J. Super. 355, 696 A.2d 1125 (App. Div. 1997)......................................20

*Rose's 1 LLC, et al. v. Erie Insurance Exchange*,
    2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020)...................................... 27-28

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    302 A.D.2d 1 (N.Y. App. Div. 2002) ...................................................... 28-29, 34

*Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*,
    2006 WL 2850465 (D. Or. Sept. 29, 2006) .......................................................35

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    2010 WL 2696782 (M.D. Pa. July 6, 2010) .......................................... 12-13, 15

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
   2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ................................................16, 18

*Southern Hospitality, Inc. v. Zurich American Ins.*,
   393 F.3d 1137 (10th Cir. 2004) ................................................................. 12-13

*St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*,
   2005 WL 1199045 (D.N.J. May 18, 2005)...........................................................15

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
   2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) .....................................16, 18, 28

*Syufy Enterprises v. The Home Insurance. Co. of Indiana*,
   1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .....................................................13

*Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*,
   1995 WL 70152 (Minn. Ct. App. Feb. 21, 1995) (unpublished)........................30

*TMC Stores, Inc. v. Federated Mut. Ins. Co.*,
   2005 WL 1331700 (Minn. Ct. App. June 7, 2005)............................................16

*Union Cty. Jail Inmates v. Di Buono*,
   713 F.2d 984 (3d Cir. 1983) ..............................................................................11

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
   439 F.3d 128 (2d Cir. 2006) ..............................................................................18

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*,
   968 A.2d 724 (N.J. Super. Ct. App. Div. 2009) ......................................... 31- 33

*Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*,
   116 N.J. 517, 562 A.2d 208 (1989) .............................................................9, 22

*Western Fire Ins. Co. v. First Presbyterian Church*,
   437 P.2d 52 (Colo. 1968)............................................................ 2, 21, 32-33, 37

## Other Authorities

Fed. R. Civ. P. 12 ...............................................................................................8, 39

Fed. R. Evid. 201 ..................................................................................................11

Restatement (Second) of Conflicts of Laws § 193 ...................................................9

## I.    INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.[1]

This proposed class action case alleges that insurance policies issued by Defendant The Charter Oak Fire Insurance Company ("Charter Oak") provide coverage for business income losses arising from the COVID-19 pandemic. Plaintiff owns and operates an eyeglass and contact lens business in Bloomfield, New Jersey. (ECF No. 1 (hereinafter "Compl."), ¶ 11). Plaintiff seeks a declaratory judgment that it is entitled to insurance coverage for claimed business income losses caused by the COVID-19 virus and "measures put in place by the civil authorities to stop the spread of COVID-19 among the population." (*Id.*, ¶ 6). Plaintiff also alleges breach of contract claims against its insurer, Charter Oak.[2]  But Plaintiff ignores the material terms of the insurance policy it purchased from Charter Oak—foremost among them

---

[1] This case is among a group of cases being considered by the Judicial Panel on Multidistrict Litigation ("JPML") for potential consolidation and transfer pursuant to an order issued on August 17, 2020 in *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942 (ECF No. 775). The JPML hearing will be held on September 24, 2020.

[2] The Complaint also asserted causes of action against Defendant The Travelers Companies, Inc. ("Travelers"). (*See, e.g.*, Compl., ¶ 13).  The parties recently filed a Stipulation of Dismissal with respect to Travelers. (ECF No. 13).

an explicit exclusion of *any* type of property coverage, for *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Compl., ¶ 37; Policy, Exhibit A, p. 108 of 127).[3]

In addition to the case-dispositive virus exclusion, the Complaint should be dismissed for several additional reasons. *First*, the Complaint fails to allege facts that, if true, would establish the essential requirements for Civil Authority coverage, which are: (1) "action of civil authority that prohibits access to the described [i.e., insured] premises"; (2) the civil authority action is "due to direct physical loss of or damage to property at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises"; and (3) the direct physical loss of or damage to property is "caused by or result[s] from a Covered Cause of Loss." (Ex. A, p. 29 of 127). Plaintiff has not identified a single action of any civil authority that satisfies

---

[3] Charter Oak issued to Plaintiff an insurance policy bearing policy number 680-8964C691-19-42 ("Policy"), a certified copy of which is attached hereto as Exhibit A. The Court may consider the Policy in reviewing this Motion to Dismiss because it is specifically referenced in Plaintiff's Complaint and Plaintiff's claims are based on the Policy. *Bartley v. Travelers*, 2020 WL 1987251, *2 (D.N.J. Apr. 27, 2020) ("Courts in this District have frequently considered insurance policies . . . when deciding motions to dismiss."); *Brusco v. Harleysville Ins. Co.*, 2014 WL 2916716, *5 (D.N.J. June 26, 2014) ("[A] court may . . . 'consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" [quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)]). All references to page numbers of the Policy correspond to the "Travelers Doc Mgmt." number that appears in the bottom margin, right-hand side of each page of Exhibit A.

any of these requirements, nor could Plaintiff do so. No civil authority in New Jersey took any action that "prohibit[ed] access" to Plaintiff's premises. Rather, the applicable executive orders issued by New Jersey Governor Phil Murphy (the "Orders") categorized Plaintiff as an "essential" business that was allowed to remain open at 50 percent capacity. In addition, Plaintiff does not allege, and the Orders do not reflect, that any of the Orders were issued "due to" direct physical loss of or damage to property at any location, let alone property located within 100 miles of Plaintiff's insured premises. To the contrary, the Complaint alleges, and the Orders confirm, that they were issued to mitigate the spread of COVID-19 and protect the health of New Jersey residents.

*Second,* to the extent Plaintiff claims entitlement to coverage under the Policy's Business Income and Extra Expense coverages, the Complaint fails to plead facts supporting an essential requirement of each of those coverages: the existence of "direct physical loss of or damage to property" at insured premises "caused by or result[ing] from a Covered Cause of Loss." (Ex. A, pp. 16-17 of 127). Plaintiff does not allege that any of its business personal property was physically lost or damaged, or that there was any physical loss or damage to the building in which it rented space. As discussed below, absent any "direct physical loss of or damage to property at [the insured] premises," Plaintiff cannot establish an entitlement to Business Income or Extra Expense coverage.

3

Because the Complaint does not plead facts sufficient to support Plaintiff's entitlement to coverage under the Policy, its breach of contract claims fail as a matter of law, and it is not entitled to the declaratory relief sought. And again, even if Plaintiff could have pled these factual requirements for coverage, Plaintiff's alleged losses—which clearly result from Coronavirus—would still be *expressly excluded* by the virus exclusion. To the extent Plaintiff attempts to proceed on behalf of a proposed class, it cannot do so where Plaintiff's individual claims fail to state a claim. The entire Complaint therefore should be dismissed, with prejudice.

## II.   PROCEDURAL HISTORY AND ALLEGED FACTS

### A.   This Lawsuit

Plaintiff operates an optometry shop located in Bloomfield, New Jersey, that "provides eyeglasses, contact lenses, and related products to its customers." (Compl., ¶ 11). Plaintiff purchased the Policy from Charter Oak, which has effective dates of December 8, 2019 to December 8, 2020. (*Id*., ¶ 15; Ex. A, p. 2 of 127). According to the Complaint, Plaintiff "had to cease operating its business because it was deemed to be non-essential" under unspecified "Closure Orders" that were issued in order "to mitigate the COVID-19 pandemic." (*Id.,* ¶¶ 12, 39, 69, 77, 86, 101). The Complaint does not cite any particular order or action of civil authority that allegedly impacted Plaintiff's business, instead referring vaguely to "Closure Orders"—or "'stay-at-home' orders," orders "clos[ing] all non-essential

businesses," and "measures to curtail business operations." (*See, e.g.*, *id.*, ¶ 29). Plaintiff alleges the cessation of its business caused it to incur Business Income, Civil Authority and Extra Expense losses, for which it sought coverage under the Policy. (*Id.*, ¶¶ 40, 69, 86, 101). Charter Oak denied Plaintiff's claim. (*Id.*).

Plaintiff seeks a declaratory judgment that the Policy provides Business Income, Extra Expense and Civil Authority coverage. (*See id.*, Counts I, III, V). Plaintiff also alleges breach of contract under the Policy. (*See id.,* Counts II, IV, VI).

### B.     Contract Language At Issue

#### 1.     Relevant Coverage Provisions

Plaintiff purchased an Office Pac policy from Charter Oak. The Policy insured certain of Plaintiff's property from covered causes of loss, such as a fire or windstorm. When a covered cause of loss results in physical loss of or damage to the insured property which forces Plaintiff to suspend its operations, the Policy also provides limited coverage for business income losses and extra expenses incurred by Plaintiff during the "period of restoration." For example, in the event of a fire that requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"— i.e., while the repairs are being made. The Business Income and Extra Expense coverage provides, in relevant part:

    **a. Business Income**

      . . .

    (2) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by <u>direct physical loss of or damage to property at the described premises</u>. The loss or damage must be caused by or result from a <u>Covered Cause of Loss</u>. . . .

      . . .

    **b. Extra Expense**

    (1) Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

(Ex. A, pp. 16-17 of 127 (underscores added)). As highlighted above, key requirements for the Business Income and Extra Expense coverages include "direct physical loss of or damage to property" at the insured premises that is "caused by or result[s] from a Covered Cause of Loss." The term "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . [e]xcluded." (*Id.*, pp. 17-18 of 127).

In the "Coverage Extension" entitled "Civil Authority," coverage for Business Income and Extra Expense is extended to:

    [T]he actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that <u>prohibits access</u> to the described premises. The civil authority action must be <u>due to direct physical loss of or damage to property</u> at locations, other than described premises, that are within 100 miles of the described premises, <u>caused by or resulting from a Covered Cause of Loss</u>.

(*Id.,* p. 29 of 127 (emphasis added)).[4] As highlighted, three key requirements for this coverage to apply are: (i) the action of civil authority must prohibit access to the described (i.e., insured) premises; (ii) the action of civil authority must be due to direct physical loss of or damage to property other than at the insured premises, but within 100 miles of it; and (iii) the loss or damage must have been "caused by or result[] from a Covered Cause of Loss" (i.e., a cause that is not excluded).

## 2.   The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy, "including but not limited to forms or endorsements that cover . . . business income, extra expense, rental value or action of civil authority." (*Id.*, p. 108 of 127). The exclusion concisely states in plain terms that:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id.* (emphasis added)).

---

[4] In the Complaint, Plaintiff quotes a different Civil Authority provision which does not appear in the Policy. (*Compare* Compl., ¶ 91, *with* Ex. A, p. 29 of 127). The Civil Authority provision that appears in the Policy controls here. *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994)).

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all of the Complaint's well-pleaded facts as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). Excepted from this presumption of truth are any "legal conclusions" couched as factual allegations, *id.*; any allegations in the Complaint that are contradicted by documents relied upon in the Complaint, *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994)); and any allegations in the

Complaint that are contradicted by documents that can be judicially noticed, *Durant v. Horton*, 2008 WL 2510661, *2 (D.N.J. June 19, 2008).

Under New Jersey law,[5] "the words of an insurance policy should be given their ordinary meaning." *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 537, 582 A.2d 1257, 1260 (1990). Courts interpreting insurance policies must "give effect to the whole policy, not just one part of it." *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 416, 143 A.3d 273, 280 (2016). Moreover, "in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi*, 121 N.J. at 537, 582 A.2d at 1260. "[C]ourts should not write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529, 562 A.2d 208, 214 (1989).

## IV.    ARGUMENT

The facts pleaded in the Complaint demonstrate as a matter of law that Plaintiff cannot prove an entitlement to coverage under the Policy because Plaintiff fails to satisfy any of the requirements for coverage under the Civil Authority,

---

[5] This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., New Jersey. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 2000 WL 35572338, *10 (D.N.J. June 6, 2000). Because the Policy only insures property located in New Jersey, (Ex. A, p. 2 of 127), New Jersey law's "site-specific" approach to choice of law requires the application of New Jersey law. *Id.* (citing the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 193).

Business Income, or Extra Expense coverages. Accordingly, Plaintiff's claims for declaratory relief regarding coverage under the Policy and for breach of the insurance contract should be dismissed with prejudice.

### A.    Plaintiff Is Not Entitled to Civil Authority Coverage as a Matter of Law

Civil Authority coverage insures certain business income losses and extra expenses if the following three prerequisites are satisfied: (1) the business income and extra expense losses are "caused by action of civil authority that *prohibits access* to the [insured] premises"; (2) the civil authority action is "*due to direct physical loss of or damage to property* at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises"; and (3) the direct physical loss of or damage to property is "*caused by or result[s] from a Covered Cause of Loss*." (Ex. A, p. 29 of 127 (emphasis added)). The Complaint fails to satisfy any of these three requirements, as explained further below.

### 1.    Civil Authority Coverage Does Not Apply Because the Orders Did Not "Prohibit Access" to Plaintiff's Premises

Plaintiff's allegations fail to establish the first requirement for Civil Authority coverage: that the civil authority action "prohibits access" to the described premises, i.e., Plaintiff's optometry shop. Although it seeks coverage under the Policy's Civil Authority provision, which requires an "*action of civil authority* that prohibits access to the [insured] premises," (Ex. A, p. 29 of 127), Plaintiff does not identify a single

"action of civil authority," much less one that "prohibit[ed] access to the [insured] premises." Instead, Plaintiff makes the vague and conclusory allegation that unspecified "Closure Orders" required Plaintiff "to cease operating its business because it was deemed to be non-essential." (Compl., ¶ 12). This "bare-bones" allegation does not state a plausible claim that any action of civil authority prohibited access to Plaintiff's business. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Accordingly, Counts III and IV fail on that basis alone.

The reason Plaintiff did not cite any order that allegedly prohibited access to its business is that no such order exists. Plaintiff operates an optometry shop that "provides eyeglasses, contact lenses, and related products to its customers." (Compl., ¶ 11). Executive Order No. 107, issued by Governor Murphy on March 21, 2020, required only "non-essential retail businesses" to "close to the public as long as [the] Order remains in effect." (Executive Order No. 107, attached as Exhibit B hereto, p. 6).[6] "Essential retail businesses" identified in Executive Order No. 107, however, were expressly "excluded from this directive" and allowed to "remain open

---

[6] This Court may take judicial notice of executive orders issued by the governor of New Jersey, which are integral to Plaintiff's claims. Fed. R. Evid. 201(b); *Union Cty. Jail Inmates v. Di Buono*, 713 F.2d 984, 988 (3d Cir. 1983) (taking judicial notice of executive orders issued by New Jersey Governor); *see also Johnson v. Shop-Vac Corp.*, 2020 WL 3496957, *4 (D.N.J. June 29, 2020) ("Taking notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment so long as the facts are noticed in accordance with the Federal Rules of Evidence.").

during their normal business hours." (*Id.*). Among the "Essential Businesses" identified in Executive Order No. 107 were "[m]edical supply stores" and "[a]ncillary stores within healthcare facilities." (*Id.*, p. 6-7). Plaintiff, which operates an optometry shop out of a location shared with an associated optometry practice, is thus an "essential" business to which Executive Order No. 107 did not prohibit access—indeed, the Order permitted Plaintiff's business to "remain open." Executive Order No. 122, issued by Governor Murphy on April 8, 2020, imposed certain requirements on essential businesses to help mitigate the spread of Coronavirus, which included limiting occupancy to 50 percent. (Executive Order No. 122, Exhibit C, p. 5). That Plaintiff apparently decided to "cease operating" entirely, (Compl., ¶ 12), does not satisfy the prohibition of access requirement for Civil Authority coverage under the plain language of the Policy.

Courts interpreting civil authority provisions hold that the phrase "prohibit access" means to "formally forbid" or "prevent" *any* access to the premises. *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). Limitations restricting access are not sufficient. For example, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782 (M.D. Pa. July 6, 2010), the court explained that "where the action of a civil authority merely hinders access to the covered premises, *without completely prohibiting access*, federal courts have held that such action is not covered" under civil authority provisions. *Id.* at *4

(emphasis added). The court found no coverage where a "majority of the customers" may not have been able to reach the insured's ski resort, but there was no "*complete inability* to access the premises." *Id.* at *5 (emphasis added). Similarly, in *Syufy Enterprises v. The Home Insurance. Co. of Indiana*, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995), the court addressed civil authority coverage for businesses affected by "dawn-to-dusk" curfews imposed by cities during the Rodney King riots. *Id.* at *1. A movie theater operator cancelled showings during the curfew period, presumably because customers could not attend. *Id.* The court found no coverage because the orders did not "deny access to a Syufy theater" or "prohibit[] any individual from entering a theater." *Id.* at *2. That the insured "opted to close its theaters" as a result of the curfews did not satisfy the policy requirement. *Id.*

Civil authority coverage cases after the September 11, 2001 terrorist attacks reinforced this distinction between orders that "prohibit access" to an insured premises and those that limit business operations, even severely, but without prohibiting access. Courts across the country uniformly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" to the various businesses.[7] Likewise, post-September 11th orders imposing "vehicular

---

[7] *See Southern Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003)

traffic restrictions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses.[8]

Here, neither Executive Order No. 107 nor Executive Order No. 122 prohibited access to Plaintiff's business, an "essential" business that Executive Order No. 107 expressly allowed to remain open and Executive Order No. 122 required to limit occupancy to 50 percent. (Ex. B, pp. 6-7; Ex. C, p. 5). Accordingly, neither Order "prohibit[ed] access" to Plaintiff's business, as that term is used in Civil Authority provisions. While Plaintiff alleges that it "cease[d] operating its business" due to unspecified "Closure Orders," (Compl., ¶ 12), that claim is directly contradicted by the Orders themselves, which control here. *Durant*, 2008 WL 2510661 at *2 ("[I]f facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not

_____

(unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks.); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, 2005 WL 1866397, *6 (N.D. Cal. 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores.).
[8] *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. Mar. 12, 2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).

to be deemed as true upon consideration of the motion to dismiss."); *St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*, 2005 WL 1199045, *13 (D.N.J. May 18, 2005) (disregarding plaintiff's characterization of agreement where contradicted by judicially-noticed document).

Courts have repeatedly held that the same civil authority provision at issue here requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage. *Ski Shawnee*, 2010 WL 2696782 at *5; *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, 2012 WL 1883461, *9 (W.D. La. 2012) ("'Civil Authority' provision . . . require[s]" insured to show "access to [insured property] was totally and completely prevented—i.e., made impossible—by [the civil authority action]."); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (M.D. La. Aug. 29, 2007) (holding coverage not triggered by order that "encouraged" residents to stay off streets before hurricane, because it did not "actually and completely prohibit[] access to the insured premises"); *By Dev., Inc. v. United Fire & Cas. Co.*, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir. 2006). Plaintiff does not and cannot allege that the Orders "completely prohibited"

access to its business premises, which was allowed to remain open at 50 percent occupancy.[9]

>   **2.     Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property"**

Plaintiff's allegations also fail to satisfy the second requirement for Civil Authority coverage: that "[t]he civil authority action must be *due to direct physical loss of or damage to property* at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises, caused by or resulting from a Covered Cause of Loss." (Ex. A, at p. 29 of 127 (emphasis added)). Courts have consistently held that similar policy provisions require "a *causal link* between *prior* damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, *8 (S.D. Tex. Feb. 15, 2008) (words "due to" in civil authority provision require a "close causal link" between previous property

---

[9] To the extent the recent decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), concluded that the plaintiff had adequately alleged a prohibition of access to restaurants that were allowed to remain open for take-out and delivery while COVID-19 orders were in place, the decision failed to address any of the precedent nationwide on civil authority coverage, and cited no supporting authority. *Studio 417*, 2020 WL 4692385 at *7. Moreover, the sole case cited in *Studio 417* on this issue explains, consistent with Defendants' position here, that "[o]ther jurisdictions that have examined this access issue have found that, generally, coverage under the civil authority section is only available when access is *completely prohibited.*" *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, *4 (Minn. Ct. App. June 7, 2005) (unpublished; emphasis added).

damage and civil authority order); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, *3 (E.D. La. Oct. 12, 2010) ("The direct nexus between the damage sustained and the order that the policy requires suggests that the Policy was designed to address the situation where damage occurs and the civil authority subsequently prohibits access.").

Here, Plaintiff repeatedly alleges that the "Closure Orders" vaguely referenced in the Complaint were issued by state governments "to protect the health and safety of their residents from the human to human and surface to human spread of COVID-19," "to stop the spread of COVID-19 among the population," "to stop the spread of the outbreak," "to prevent the spread of COVID-19," and "to mitigate the COVID-19 pandemic." (Compl., ¶¶ 3, 6, 7, 39, 59(c), 69, 70(i), 70(ii), 79, 86, 87(ii), 94, 101, 102(i), 102(ii), 109). Consistent with Plaintiff's allegations, none of the Orders issued by Governor Murphy makes *any* reference to the order being issued "due to" any preexisting property damage at any location, let alone within 100 miles of Plaintiff's premises.[10] Rather, Governor Murphy has explicitly stated that he issued the Orders to facilitate a statewide response to the COVID-19 public health emergency. (*E.g.*, Executive Order No. 138, attached as Exhibit D hereto, p. 1 ("I issued a series of Executive Orders . . . to protect the public health, safety, and

---

[10] *See also* Executive Order No. 107, Exhibit B, at p. 3 (describing purpose as "effort to reduce the rate of community spread of the disease"); Executive Order No. 122, Exhibit C, p. 4 (describing purpose as "preventing increased spread of COVID19").

welfare against the emergency created by COVID-19, including Executive Order Nos. 104-133 . . . .")). This is another independent reason why Plaintiff is not entitled to coverage under the Civil Authority provision.[11]

### 3. Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus or Other Excluded Causes of Loss

Plaintiff's allegations also fail to satisfy the third requirement for Civil Authority coverage: pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken due to physical loss or damage to property within 100 miles of the insured premises

---

[11] *See*, *e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of property damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops*, 2004 WL 5704715 at *7 (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing property damage); *Jones, Walker*, 2010 WL 4026375 at *3 (finding no coverage based on lack of causal link between hurricane evacuation order and any damage to property occurring prior to issuance of order); *South Texas Med. Clinics*, 2008 WL 450012 at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico"). To the extent that *Studio 417* concluded that the plaintiffs' allegations had plausibly satisfied this requirement, the court failed to review and analyze any civil authority orders to identify the reasons for the orders being issued, and also failed to address any of the case law on this issue. *Studio 417*, 2020 WL 4692385 at *7.

which is "*caused by or result[s] from a Covered Cause of Loss*." (Ex. A, at p. 108 of 127 (emphasis added)). As the Policy makes clear, an *excluded* risk of loss is *not* a Covered Cause of Loss. (*Id.*, at p. 17-18 of 127; *see also Mar. Park, LLC v. Nova Cas. Co.*, 2019 WL 1422918, *3 (N.J. Super. Ct. App. Div. Mar. 29, 2019) (per curiam; unpublished) ("Under the civil authority provision, the prohibition on access to the property experienced by the insured must be the result of damage caused by a 'covered cause of loss.'").

Here, the Complaint expressly and repeatedly alleges that the claimed losses for which Plaintiff seeks to recover were caused by "precautionary measures taken by [New Jersey] to prevent the spread of COVID-19." (Compl., ¶ 39; *see also id.*, ¶ 70(i), 70(ii), 86, 87(ii), 94, 101, 102(i), 102(ii), 109 (alleging losses "incurred . . . in connection with" the "Closure Orders" and/or "the suspension of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic")). The Complaint thus pleads losses that fall squarely within the Policy's exclusion of "loss or damage <u>caused by or resulting from any virus</u>, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. A, p. 108 of 127). And the virus exclusion expressly applies to Civil Authority coverage. (*Id.* ("The exclusion . . . applies to . . . forms or endorsements that cover business income*,* extra expense, rental value or <u>action of civil authority</u>." (emphasis added))). Moreover, as the Complaint makes clear, "COVID-19"—or,

Coronavirus[12]—is a "virus" that causes sickness and death. (Compl., ¶¶ 18-19; *see generally id.*, ¶¶ 16-29). Thus, as alleged by Plaintiff, the Coronavirus is a virus "that induces or is capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion. (Ex. A, p. 108 of 127).   New Jersey law instructs that "when the language of the policy is clear, the court is bound to enforce its terms as they are written" and courts "must not disregard the clear import and intent of the exclusionary clauses in the policy." *Robert W. Hayman, Inc. v. Acme Carriers, Inc.*, 303 N.J. Super. 355, 357, 696 A.2d 1125, 1127 (App. Div. 1997) (citations omitted).

Courts have recently held that virus exclusions precluded coverage for similar property insurance claims arising from the COVID-19 pandemic. In *Gavrilides Management Co. v. Michigan Ins. Co.*, a Michigan Circuit Court ruled that an identical virus exclusion applied to bar coverage for the insured restaurant's claim under Civil Authority coverage. (Case No. 20-258-CB, Mich. Cir. Ct. for Ingham County, Tr. of July 1, 2020 Hearing, p. 20-21 (attached as <u>Exhibit E</u> hereto)). In so ruling, the court rejected the insured's argument that the exclusion was vague and did not apply to civil authority coverage, and concluded that the exclusion "supplies a completely workable, understandable, usable definition of the word virus." (*Id.*)

---

[12] COVID-19 is the disease caused by the SARS-Cov-2 virus, commonly referred to as the Coronavirus. (*See, e.g.*, Executive Order No. 107, <u>Exhibit B</u>, at p. 1).

Here, as in *Gavrilides,* there is no question that the plain language of the virus exclusion bars coverage for Plaintiff's claim under the Policy's Civil Authority coverage. The Coronavirus is not a Covered Cause of Loss and therefore cannot give rise to Civil Authority coverage.

To avoid this outcome, Plaintiff alleges that the cause of its losses was not Coronavirus but rather "precautionary measures taken by [the state of New Jersey] to prevent the spread of COVID-19 in the future." (Compl., ¶ 39). This argument fails for several reasons. *First*, Plaintiff's own allegations demonstrate that the Orders are inextricably intertwined with the reason they were issued: the Coronavirus. Plaintiff cannot avoid the application of the virus exclusion by recharacterizing its loss as being caused by Orders that were issued to slow the spread of the virus rather than being caused by the virus itself. Plaintiff's theory is also inconsistent with the language of the virus exclusion. The virus exclusion expressly applies to the Civil Authority, Business Income and Extra Expense coverages, (Ex. A, at p. 108 of 127), which only apply where, among other requirements, a business has been forced to suspend its operations. But a virus cannot, in and of itself, close a business; rather, some form of human intervention (such as by government order or, as here, business decision) is obviously required to cause a business income or extra expense loss. To adopt Plaintiff's theory that the Orders, divorced from their purpose, constitute a Covered Cause of Loss would

render the virus exclusion nugatory and "write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc.*, 562 A.2d at 214.

In *Diesel Barbershop, LLC, et al. v. State Farm Lloyds,* 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), Judge David Ezra concluded that a similar virus exclusion precluded coverage for business income losses resulting from the COVID-19 pandemic. Granting the insurer's motion to dismiss, the court rejected the same argument that Plaintiffs put forth here—that government orders issued to mitigate the spread of the virus were the cause of loss rather than the virus. The court explained that:

> Plaintiffs have pleaded that COVID-19 is in fact the reason for the [government] Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, *the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community.* **Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing.**

*Id.* at \*6 (emphasis added).[13] The plaintiff in *Gavrilides* similarly argued that the virus exclusion did not apply to business income losses because "the damage caused was really caused by actions of the civil authority to protect public health." (Ex. E, p. 21). The court flatly rejected plaintiff's theory. (*Id.* ("[T]he plaintiff has not

---

[13] The court also discussed at some length an anti-concurrent causation ("ACC") clause in the virus exclusion in the policy at issue. *Id.* at \*6-7. The ACC clause was not essential to the outcome, however, because the court concluded that the virus was the "primary root cause." *Id.* at \*6.

supported that [the virus exclusion] doesn't apply . . . .")). Here, as in *Diesel Barbershop* and *Gavrilides*, there is no question that the plain language of the virus exclusion bars coverage.

*Second*, Plaintiff's theory also fails because, under the plain language of the Civil Authority provision, the Orders themselves cannot be the Covered Cause of Loss. The Civil Authority provision states that "[t]he civil authority action must be due to direct physical loss of or damage to property at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises, caused by or resulting from a Covered Cause of Loss." (Ex. A, at p. 29 of 127). The Covered Cause of Loss must cause the direct physical loss or damage that results in the civil authority action. (*Id.*). Plaintiff's proposed interpretation, which appears, at most, to be that the "direct physical loss of or damage to property" was the loss of use of businesses caused by the Orders, reads the Civil Authority provision backwards. The physical loss or damage must cause the civil authority action, not vice versa. *See Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*, 2007 WL 9703576, *4 (S.D. Fla. Oct. 19, 2007) ("The order of civil authority cannot in any reasonable manner be construed as a 'peril.'").

*Third*, the Policy's Ordinance or Law exclusion provides that "[w]e will not pay for loss or damage caused directly or indirectly by . . . *[t]he enforcement of any ordinance or law . . . [r]egulating the* construction, *use* or repair of any property."

(Ex. A, at p. 36 of 127). As a New York appellate court has explained, this exclusion "clearly and unambiguously excludes coverage for losses caused directly or indirectly by the enforcement of any ordinance or law regulating the . . . use . . . of any property" and "excludes coverage for losses, including business income losses, caused by the enforcement of the law." *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924 (N.Y. App. Div. 2015) (holding that, where dental practice could not operate for eleven months as a result of town's enforcement of ordinance requiring plaintiff to obtain a certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses).[14] Accordingly, Plaintiff's flawed legal theory that the Orders caused a direct physical loss of or damage to property fails for the additional reason that coverage for such losses is precluded by the Ordinance or Law exclusion.

Thus, as a matter of law, Plaintiff is not entitled to Civil Authority coverage because the Complaint does not and cannot allege (1) that the Orders "prohibited access" to Plaintiff's premises; (2) that the Orders were "due to direct physical loss of or damage to property" within 100 miles of the insured premises; or (3) that any physical loss or damage to property within 100 miles of the insured premises was "caused by or result[ed] from a Covered Cause of Loss."

---

[14] The Ordinance or Law exclusion does not preclude Civil Authority coverage when all of the specific requirements for that coverage are satisfied. As discussed above, Plaintiff has not and cannot allege the prerequisites for such coverage.

**B.**     **Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law**

The focal point of the Complaint is Civil Authority coverage, as addressed above. Yet Plaintiff also alleges entitlement to coverage under the Policy's Business Income and Extra Expense provisions, (Compl., ¶¶ 77, 107-108), and seeks declarations to that effect, (*id.*, ¶¶ 70(ii); 102(ii)). These claims also fail as a matter of law.

The Policy's Business Income provision provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the [insured] premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (Ex. A, pp. 16-17 of 127). The Extra Expense provision similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.* at p. 17 of 127). The Court should dismiss Counts I, II, V and VI because the Complaint alleges that the financial losses sustained and expenses incurred by Plaintiff were the result of Coronavirus and the Orders issued to mitigate its spread, neither of which is a Covered Cause of Loss. In addition, the Complaint fails to allege facts supporting a plausible claim that property at premises described in the Policy suffered direct physical loss or damage. For these reasons, Counts I, II, V and VI of the Complaint

fail to state claims for declaratory relief or breach of contract and should be dismissed with prejudice.

### 1. The Complaint Fails to Plead Any "Direct Physical Loss of or Damage to Property" at the Insured Premises

The Complaint includes allegations regarding the Coronavirus purportedly causing physical loss or damage generally, (*see* Compl., ¶ 24 (alleging that "the virus can live on contaminated objects or surfaces")); but expressly disavows the notion that Coronavirus was found in or caused any damage to the insured premises, (*id.*, ¶ 39).[15] Instead, Plaintiff attempts to satisfy the "direct physical loss of or damage to property" requirement by alleging that its inability to "use [the insured] property for its intended purpose" constitutes "direct physical loss of and damage to [its] property." (*Id.*, ¶ 38). Courts have rejected this exact argument in the context of Business Income losses arising from COVID-19.

In *Gavrilides*, which addressed government orders prohibiting customers from consuming food and beverages in a restaurant's dining room, the Michigan Circuit Court dismissed as "just simply nonsense" the plaintiff's suggestion that the inability to use insured premises satisfies the "physical loss" requirement of

---

[15] Because Plaintiff does not allege that Coronavirus came into contact with any insured property, the Court need not address whether the presence of Coronavirus on insured property would constitute "direct physical loss of or damage to" such property, and Charter Oak does not seek adjudication of that issue at this time. Charter Oak notes, however, that if Coronavirus were on surfaces or objects, it would not constitute direct physical loss of or damage to property as a matter of law.

Business Income coverage, noting that "it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Gavrilides Mgmt. Co.,* Ex. E, p. 20. Similarly, in *Diesel Barbershop*, the court found that the insured's claim for business income coverage arising from the Coronavirus "fail[ed] to plead a direct physical loss" because actions taken by civil authorities in order to stem the spread of the virus did not result in any "distinct, demonstrable physical alteration of the property." *Diesel Barbershop*, 2020 WL 4724305 at *5 (citations omitted).

The District of Columbia Superior Court applied similar reasoning in adjudicating a similar claim for business income losses arising from governmental orders issued to stem the COVID-19 pandemic. Granting summary judgment in favor of the insurer, the court rejected the plaintiffs' position that governmental orders could cause direct physical loss of or damage to property that would trigger business income coverage, explaining that: "Standing alone and absent intervening actions by individuals and businesses, the orders did not effect any direct changes to the properties. . . . [T]he mayor's orders did not have any effect on the material or tangible structure of the insured properties." *Rose's 1 LLC, et al. v. Erie Insurance Exchange*, 2020 WL 4589206, *2 (D.C. Super. Ct. Aug. 6, 2020). The court further stated that, even if it accepted the insured's argument that "loss of use" potentially could be covered, "any 'loss of use' must be caused, without the intervention of other

27

persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property[,] [and] Mayor Bowser's orders were not such a direct physical intrusion." *Id.* at *3. The court further reasoned that "none of the cases cited by Plaintiffs stand for the proposition that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy," distinguishing various cases relied upon by the plaintiffs, and explaining that "courts have rejected coverage when a business's closure was not due to direct physical harm to the insured premises." *Id.* at *3-4.

The *Gavrilides*, *Deisel Barbershop*, and *Rose's I* courts' rejection of the plaintiffs' "loss of use" argument in the context of COVID-19 is consistent with many prior decisions rejecting similar arguments.[16] For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1 (N.Y. App. Div. 2002), a Broadway

---

[16] *Studio 417* is wholly inapposite here, for two reasons. First, the court relied entirely on the plaintiffs' allegations that "over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." *Studio 417*, 2020 WL 4692385 at *2. The court concluded that the complaint had sufficiently pleaded direct physical loss only by alleging that "COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable, resulting in direct physical loss to the premises and property.'" *Id.* at *4. Here, Plaintiff alleges the opposite, expressly denying that Coronavirus was ever present in the insured premises. (Compl., ¶ 39). Second, unlike in *Studio 417*, the Policy here includes a virus exclusion which bars coverage for Plaintiff's loss, even if they could plead direct physical loss of or damage to property (which they cannot). Any allegation that the Coronavirus was in Plaintiffs' Premises would be fatal to their claims under the virus exclusion.

theatre was forced to cancel numerous performances of a musical when the city closed off the block on which it was located after scaffolding attached to a nearby building collapsed. *Id.* at 2-3. Reversing the trial court's entry of summary judgment for the insured, the New York Appellate Division rejected the trial court's conclusion that "loss of . . . property" includes "loss of use," holding that that "the plain meaning of the words 'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.* at 7 (citations omitted).

Other courts have rejected similar business income loss claims based on loss of use. *See, e.g.*, *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where heavy snowstorm made insured premises inaccessible); *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such

closure."); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, there was no "direct physical loss of or damage to" property).[17]

In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), the Third Circuit was called upon to decide whether, under the law of New York or New Jersey, the existence of asbestos-containing building materials in a building constituted "direct physical loss or damage" to property within the meaning of commercial property policies. The Third Circuit answered the question in the negative, affirming the district court's entry of summary judgment for the insurers. *Id.* at 236.  In so ruling, the court acknowledged that "[i]n ordinary

---

[17] Along the same lines, courts have repeatedly held that a defect in title to property which has the legal effect of depriving the insured of the property, is not a tangible, "physical loss," and therefore not covered by property insurance policies. *See Dae Assocs., LLC v. AXA Art Ins. Corp.*, 158 A.D.3d 493, 494 (N.Y. App. Div. 2018); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 527 N.E.2d 1179, 1180 (Mass. App. Ct. 1988); *Nevers v. Aetna Ins. Co.*, 546 P.2d 1240, 1241 (Wash. Ct. App. 1976); *Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*, 1995 WL 70152, *2 (Minn. Ct. App. Feb. 21, 1995) (unpublished).

parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," and then stated:

> "[P]hysical loss or damage" occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility. The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage.

*Id.* at 235. Because the summary judgment record revealed no evidence of actual contamination or an imminent threat of asbestos contamination in any of the insured buildings that made them uninhabitable, the court held that no "direct physical loss or damage" had occurred. *Id.* at 236.

The New Jersey Appellate Division took a similar position in *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724 (N.J. Super. Ct. App. Div. 2009), in which supermarket operators sought to recover under a utility interruption endorsement to their policy for food spoilage resulting from a power outage. The court concluded that there was "physical damage" within the meaning of the endorsement to an electrical grid when "*due to a physical incident or series of incidents*, the grid and its component generators and transmission lines were *physically incapable of performing their essential function of providing electricity*[.]" *Id.* at 734–35 (emphasis added). The court noted that "[w]e would reach a different result," i.e., the court would not find coverage, "if, for example, *a*

31

*governmental agency had ordered* that the power be shut off to conserve electricity."

*Id.* at 734 n.7 (emphasis added). The court also relied in part on a Colorado Supreme

Court decision which noted that "[i]t is perhaps quite true that the so-called 'loss of

use' of the [insured] premises, standing alone, does *not* in and of itself constitute a

'direct physical loss.'" *Id.* at 735 (emphasis added) (quoting *Western Fire Ins. Co.*

*v. First Presbyterian Church*, 437 P.2d 52, (Colo. 1968)). The *Wakefern* court rested

its decision only on the special "Services Away Extension" endorsement to the

policy at issue, which was purchased by supermarkets specifically to insure

perishables against a power outage. The court strongly suggested that the base policy

form would not provide such coverage, noting that "if the basic policy [insuring

against 'direct physical loss to covered property'] covered this situation, it is difficult

to perceive why the insured would have procured the Services Away Extension." *Id.*

at 739.

Consistent with *Wakefern* and *Port Authority*, in *Gregory Packaging, Inc. v.*

*Travelers Property Cas. Co. of America*, 2014 WL 6675934 (D.N.J. Nov. 25, 2014),

this Court found that the "discharge" of ammonia gas into a food-processing facility

"inflicted 'direct physical loss of or damage to' [the insured's] facility, as that phrase

would be construed under New Jersey law by the New Jersey Supreme Court,

because the ammonia *physically rendered the facility unusable for a period of time*."

*Id.* at *6 (emphasis supplied).

32

Here, in contrast to *Wakefern* and *Gregory Packaging*, based on the facts alleged, Plaintiff's optometry shop and equipment therein were not *physically* impacted in any respect. Unlike in *Wakefern* or *Gregory Packaging*, based on what is alleged, *nothing* happened to Plaintiff's business or equipment therein. Plaintiff's property was not "physically incapable of performing [its] essential function," *Wakefern*, 968 A.2d at 734, or "physically rendered . . . unusable for a period of time," *Gregory Packaging*, 2004 WL 6675934 at *6. Plaintiff expressly denies that Coronavirus was ever present in its business, (Compl., ¶ 39), let alone that it contaminated any property to a point where the function or use of the business was eliminated (assuming that were even possible where the virus can be readily and quickly eliminated by cleaning or the mere passage of time). Thus, while the presence of Coronavirus within a building would not constitute "direct physical loss of or damage to property," that simply is not even claimed in this case.

## 2. Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of Insurance Policy Interpretation

In several respects, Plaintiff's position is contrary to the basic principle of New Jersey insurance law that courts must construe insurance policies to "give effect to the whole policy, not just one part of it." *Cypress Point Condo. Ass'n, Inc.*, 226 N.J. at 416, 143 A.3d at 280. *First*, when the Policy covers a Business Income or Extra Expense loss, the time period for such coverage is the "period of restoration," (Ex. A, at pp. 16-17 of 127), which generally ends on "[t]he date when the property

at the described premises *should be repaired, rebuilt or replaced* with reasonable speed and similar quality," (*id.* at p. 51 of 127 (emphasis added)). Courts have repeatedly recognized that this definition contemplates that Business Income coverage requires a *physical* change to insured property that is capable of being remedied through repair or replacement. *See, e.g. Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 ("The business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1, 7-8 (N.Y. App. Div. 2002) (similar). Here, there is nothing in Plaintiff's premises to be repaired, rebuilt or replaced.

*Second*, the Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policy contains an express exclusion stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." (Ex. A, at p. 38 of 127). Construing the phrase "direct physical loss or damage" to encompass an

34

alleged loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether. *Princeton Women's Ctr. v. ProSelect Ins. Co.*, 2011 WL 4901310, *7 (D.N.J. Oct. 14, 2011) (rejecting proposed interpretation of policy that "would necessarily render [an endorsement] superfluous and require this Court to violate a basic tenant of contract interpretation"); *Aetna Cas. & Sur. Co. v. Morton Int'l Inc.*, 1995 WL 865782, *2 (N.J. Super. Ct. Law Div. Aug. 7, 1995) (rejecting interpretation of personal injury liability endorsement "that would render the pollution exclusion clause applicable to bodily injury and property damage claims meaningless"); *see also Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*, 2006 WL 2850465, *1, *5-6 (D. Or. Sept. 29, 2006) (where well could not produce anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied).[18]

*Third*, if, as Plaintiff maintains, the mere loss of use of its insured premises following a governmental order purportedly restricting its use constituted "direct physical loss of or damage to property," the Civil Authority provision, which is a "Coverage Extension" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Plaintiff's position were adopted,

---

[18] Of course, when a covered cause of loss, such as a fire, results in physical loss of or damage to property and that causes a suspension of operations, the "loss of use" exclusion does not apply because the cause of the loss is the fire.

any action of civil authority that prohibits access to the insured premises within the meaning of the Civil Authority provision would constitute "direct physical loss of or damage to property at [the insured] premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policies to include the "Coverage Extension" for Civil Authority. Again, an insurance policy should not be construed in a manner that renders any of its provisions superfluous. *See Princeton Women's Ctr.* 2011 WL 4901310 at *7. In addition to all of the other reasons set forth above, Plaintiff's allegations that the Business Income and Extra Expense coverages apply to a governmental order restricting the use of insured premises contravenes these basic principles of insurance policy interpretation and must be rejected.

### 3.   Plaintiff's Alleged Losses Were Not Caused by a Covered Cause of Loss

Even if Plaintiff had alleged direct physical loss of or damage to property at the insured premises, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage: Plaintiff has not alleged a Covered Cause of Loss.

The virus exclusion expressly applies to Business Income and Extra Expense coverage. (Ex. A, at p. 108 of 127 ("The exclusion . . . applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority." [emphasis added])). The Complaint alleges that Plaintiff's claimed

financial losses and expenses resulted from "precautionary measures taken by [the state of New Jersey] to prevent the spread of COVID-19." (Compl., ¶¶ 38-39). For the same reasons set forth in Section IV.A.3 above, the virus exclusion applies to Plaintiff's claim for Business Income and Extra Expense coverage, just as it applies to the Civil Authority coverage. Thus, as a matter of law, Plaintiff's Complaint premised on losses caused by the Coronavirus cannot trigger Business Income and Extra Expense coverage. *See Gavrilides Mgmt. Co.*, Exhibit E, at 20-21; *Diesel Barbershop,* 2020 WL 4724305 at *6.

To the extent that Plaintiff attempts to end-run the virus exclusion by alleging that its claimed losses under the Business Income and Extra Expense coverages stem from the Orders rather than the Coronavirus (*see, e.g.*, Compl., ¶¶ 38-39), in addition to the reasons set forth in Section IV.A.3 above, this argument also fails because the Orders are a separately *excluded* cause of loss under the Acts or Decisions and Ordinance or Law exclusions.[19] *First*, the Policy excludes "loss or damage caused by or resulting from . . . *[a]cts or decisions*, including the failure to act or decide, *of any* person, group, organization or *governmental body*." (Ex. A, at p. 40 of 127 (emphasis added)). Courts have held that similarly-worded Acts or Decisions

---

[19] The Acts or Decisions and Ordinance or Law exclusions do not preclude Civil Authority coverage when all of the specific requirements for that coverage are satisfied. As discussed above, Plaintiff has not and cannot allege the prerequisites for such coverage.

exclusions are unambiguous and bar coverage for loss or damage caused by similar types of governmental orders. *See, e.g., Jernigan v. Nationwide Mut. Ins. Co.*, 2006 WL 463521, *10-11 (N.D. Cal. Feb. 27, 2006) (Acts or Decisions exclusion applied to loss caused by, among other acts or decisions, a town's "stop-work order"); *Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (Acts or Decisions exclusion barred coverage where "the real losses claimed herein resulted from refusal by the authorities to permit resumption of operations"); *Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, 2014 WL 1041831, *7 (S.D.N.Y. Mar. 18, 2014) (granting insurer's motion for partial summary judgment on Acts or Decisions exclusion where electric utility's decision to shut down power resulted in plaintiff's business income loss).

*Second*, the Policy's Ordinance or Law exclusion provides that "[w]e will not pay for loss or damage caused directly or indirectly by . . . *[t]he enforcement of any ordinance or law . . . [r]egulating the* construction, *use* or repair of any property." (Ex. A, at p. 38 of 127). As mentioned above, this exclusion "clearly and unambiguously excludes coverage for losses caused directly or indirectly by the enforcement of any ordinance or law regulating the . . . use . . . of any property" and "excludes coverage for losses, including business income losses, caused by the enforcement of the law." *Ira Stier*, 127 A.D.3d at 924 (holding that, where dental practice could not operate for eleven months as a result of town's enforcement of

ordinance requiring plaintiff to obtain a certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses).

In summary, the Policy's Business Income and Extra Expense coverages apply only where the Plaintiff's business operations are suspended due to "direct physical loss of or damage to" property at insured premises caused by a Covered Cause of Loss. Because the Complaint has not pled the existence of any direct physical loss of or damage to property at Plaintiff's premises, let alone that such physical loss of or damage to property is due to a Covered Cause of Loss, Plaintiff's claims for declaratory relief and breach of contract with respect to Business Income and Extra Expense coverage fail as a matter of law and should be dismissed.

## V.  CONCLUSION

For all of the reasons stated above, Plaintiff has failed to state any claim upon which relief may be granted.[20] Thus, Charter Oak respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice under Federal Rule of Civil Procedure 12(b)(6).

---

[20] To the extent Plaintiff attempts to plead claims on behalf of a proposed class, (Compl., ¶¶ 51-63), those allegations cannot survive where Plaintiff's individual claims fail to state a claim. *See*, *e.g.*, *Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("Because no class has been certified here, if [the named plaintiff's] claim fails, the entire action must be dismissed."); *Napoli v. HSBC Mortg. Servs. Inc.*, 2012 WL 3715936, *5 (D.N.J. Aug. 27, 2012) (same).

Respectfully submitted,

*/s/Liza M. Walsh*
Liza M. Walsh
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, N.J. 07102
(973) 757-1100

Of Counsel:
Stephen E. Goldman (subject to *pro hac vice* admission)
Wystan M. Ackerman (subject to *pro hac vice* admission)
Denis J. O'Malley (subject to *pro hac vice* admission)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200

*Attorneys for Defendant, The Charter Oak Fire Insurance Company*

Dated: August 18, 2020